# No. 13-1566

In the
United States Court of Appeals
for the Sixth Circuit

## United States of America,

Plaintiff-Appellee

v.

## Thomas William Wooten,

Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 2:12-cr-20040-1

## Brief for the United States

Barbara L. McQuade
United States Attorney

Hala Y. Jarbou
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9734
hala.jarbou@usdoj.gov

# Table of Contents

Table of Authorities.................................................................................ii

Oral Argument Requested ................................................................. iiii

Issue Presented ...................................................................................1

Statement of the Case ..........................................................................1

    A.    Procedural history.................................................................1

    B.    Statement of Facts .................................................................3

Summary of Argument.........................................................................7

Argument.............................................................................................7

    The District Court Did Not Err in Denying the Defendant's
    Motion to Suppress Defendant's Statement....................................7

Conclusion .........................................................................................15

Certificate of Service ..........................................................................16

Relevant District Court Documents.......................................................17

i

# Table of Authorities

## Cases

*Missouri v. Seibert*, 542 U.S. 600 (2004) ................................... 8, 9, 10, 11

*Oregon v. Elstad*, 470 U.S. 298 (1985) ............................................. 10, 11

*United States v. Murphy*, 107 F.3d 1199 (6th Cir. 1997) ......................... 7

*United States v. Pacheco-Lopez*, 531 F.3d 420 (6th Cir. 2008) ............. 8, 9

*Wong Sun v. United States*, 371 U.S. 471 (1963) ................................... 11

## Statutes & Rules

18 U.S.C. § 2251(a) ................................................................................. 1

18 U.S.C. § 2252A(a) .............................................................................. 1

Fed. R. App. 4(b)(2) ................................................................................ 3

## Oral Argument Requested

The government does not object to the defendant's request for oral argument.

## Issue Presented

Whether the district court erred in denying defendant's motion to suppress his *Mirandized* statement made at FBI offices subsequent and separate to his initial statement at the scene.

## Statement of the Case

### A.   Procedural history.

On November 1, 2012, a grand jury indicted Thomas William Wooten on two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a); two counts of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (R. 35: First Superseding Indictment, PgID 347–353).

Wooten filed a motion to suppress the defendant's statement he made and the physical evidence that was seized. (R. 18: Motion to Suppress, PgID 71–76). The government responded. (Sealed Appendix, pp. 1–41). After the district court held an evidentiary hearing (R. 32: Suppression Hrg Tr., PgID 154–335), it issued an order denying in part defendant's motion to suppress (denying the request to suppress the

1

physical evidence seized and denying the suppression of defendant's statements based on a coercion argument, finding the defendant's statements were not coerced). The court ordered supplemental briefing on the distinction between the two statements made by the defendant—one made at the scene and the other at FBI offices. (R. 25: Order Denying in Part, PgID 124–125). The supplemental briefs were filed. (R. 27: Defendant Supplemental Brief, PgID 127–133; R. 30: Response to Defendant Supplemental Brief, PgID 136–146). The district court subsequently entered an opinion and order denying defendant's motion to suppress the statement defendant made at the FBI's office. (R. 33: Opinion and Order Denying Defendant's Motion to Suppress Defendant's Statement, PgID 336–345).

After a four day trial, on December 14, 2012, the jury convicted defendant of all six counts. (R. 39: Jury Verdict Form, PgID 359–360). On April 10, 2013, and continued on April 23, 2013, the district court sentenced defendant to 300 months' imprisonment on count one, 360 months' imprisonment on count two, 120 months' imprisonment on counts three, four, and five, and 60 months' imprisonment on count six, all to be served concurrently; it entered its judgment on April 26, 2013.

(R. 55: Judgment, PgID 417–424). On April 23, 2013, defendant timely appealed. (R. 52: Notice of Appeal, PgID 413). *See* Fed. R. App. 4(b)(2) (A notice of appeal filed after the court pronounces sentence but before judgment is entered is timely).

## B.   Statement of Facts

The investigation of the defendant by Detroit FBI started with two separate child pornography investigations by the FBI in Indianapolis, Indiana, and New Haven, Connecticut. The Indianapolis investigation identified several individuals who were trading child pornographic images with their suspect. One of those traders was tracked to an IP (Internet Protocol) address located at 21586 Dupont Drive in Macomb Township, Michigan. In the New Haven investigation, an undercover officer downloaded child pornographic images from an IP address located at 21586 Dupont Drive in Macomb Township, Michigan. Both investigations resulted in a lead being sent to the Detroit FBI office to follow up regarding the Dupont Drive location in Michigan. (R. 60: Trial Tr. at PgID 846–848). Based on those investigations and the Detroit FBI's investigation showing that Thomas Wooten lived at that address, a federal search warrant was obtained for 21586 Dupont Drive in

Macomb Township, Michigan. The search warrant was executed on November 2, 2011. (*Id*. at PgID 849–852).

Wooten, a roommate, and the roommate's minor daughter were in the home when agents arrived. (R. 32: Tr. at PgID 233–234). The defendant was detained in the back of a deputy sheriff's patrol car while the home was searched. Special Agent William Fleming told Wooten that he was not under arrest and that the agents had a search warrant for his home based on their investigation of the distribution of child pornography. (*Id*. at PgID 277–278). After agents interviewed the defendant's roommate, the defendant was moved from the patrol car to the agents' car (a regular car, not a patrol car) where agents spoke with the defendant. At some later point, someone on the search team discovered that the defendant had an outstanding warrant. When they learned about the outstanding warrant— after the interview—the defendant was arrested. (*Id*. at PgID 278–280).

Prior to learning about the warrant, the agents asked the defendant "introductory question[s]" including who was living at the house, computer access, and who had laptops—the same questions asked of the defendant's roommate. (*Id*. at PgId 280, 84, 118). At some

4

point after this questioning, at 7:20 a.m., agents transported the defendant to the Macomb County FBI office. (*Id.* at PgID 280–281). The transport lasted a few minutes and they arrived at the FBI offices at 7:28 a.m. (Id. at PgID 88). Offers of food and drink were made to the defendant. The defendant indicated he did not want food but he did want coffee; two cups of coffee were given to the defendant. The defendant also asked to use the restroom and used it twice. (*Id.* at PgID 284, 90). Defendant was read his *Miranda* rights at approximately 7:45 a.m (*Id.* at PgID 88); the defendant indicated he understood his rights and signed the waiver in the agents' presence. (*Id.* at PgID 286–287, 94–96). The defendant then gave a detailed oral statement and signed a written statement that an agent prepared but Wooten reviewed and corrected. (*Id.* at PgID 288–290, 96–98 ). During this interview, the defendant also discussed and signed forms granting consent to assume his online identity and consent to search his cellphone (*Id.* at PgID 290, 292, 98, 101).

The initial interview at the scene garnered some information (the defendant's e-mail address and some information about photographs that were sent by the defendant, including identifying the young child

5

in some of the photographs). (*Id.* at 298, 106–107, 109). The interview later at the FBI offices garnered much more detail about these topics and others. A two-page FBI report summarized the initial interview at the scene and a six-page report summarized the interview at the FBI offices. (*Id.* at PgID 297). Agent Fleming testified that the agents did not know about the existence of a thumb drive containing hundreds of child pornographic images or its whereabouts in the house until Wooten was interviewed at the FBI offices. (*Id.* at PgID 293). Even Wooten agreed that the discussion at the FBI office was more detailed, that he gave agents "more technical" information, that a "bunch of other questions relating to the Internet" were asked, and that he and the agents "went into a little more depth" with questions than were asked in the initial interview. (*Id.* at PgID 49, 72–73).

Special Agent Fleming testified that in his experience it was not surprising that the defendant cooperated and freely incriminated himself; in his experience, when perpetrators of distribution or manufacture of child pornography are interviewed, they are usually very cooperative. (*Id.* at PgID 303).

# Summary of Argument

The district court properly denied defendant's motion to suppress defendant's post-*Miranda* statement. The two voluntary statements given by the defendant, one at the scene and one at FBI offices, are not one continuous statement with *Miranda* interjected in the middle. The second statement is separate and distinct from the first.

# Argument

### The District Court Did Not Err in Denying the Defendant's Motion to Suppress Defendant's Statement.

On suppression issues, this Court reviews a district court's factual findings for clear error and its legal conclusions de novo. *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997).

Defendant contends that the district court erred by not suppressing the second statement he made to FBI agents. Defendant's second statement, at the FBI office in Macomb County, after he had been formally arrested, after he had been transported from the scene, and after he had been advised of his *Miranda* rights is separate and distinct from the first statement he gave in the agents' vehicle.

Invoking *Missouri v. Seibert*, 542 U.S. 600 (2004), and *United States v. Pacheco-Lopez*, 531 F.3d 420 (6th Cir. 2008), defendant incorrectly characterizes the two statements he made as one continuous statement yielding the same confession. Seibert was arrested for murder, she was interviewed at the police station, she was not advised of her *Miranda* rights, the officer questioned her for 30 to 40 minutes, the officer obtained a confession, the officer then gave Seibert a 20 minute break, then returned, advised Seibert of her *Miranda* warnings, and then obtained a signed waiver. The officer "testified he made a conscious decision to withhold *Miranda* warnings, question first, then give the warnings, and then repeat the question until he got the answer previously given." *Seibert*, 542 U.S. at 600. *Seibert* held that that recitation of *Miranda* was not "effective."

Similarly, the court in *Pacheco-Lopez* found that on the facts of that case, late *Miranda* warnings did not function effectively. In *Pacheco-Lopez*, after a controlled buy of cocaine and arrests of persons leaving the home, officers obtained a search warrant for the house. When they executed the search warrant, defendant Pacheco-Lopez and another were present. Pacheco-Lopez was asked questions relating to

securing the home, related to his identity, Pacheco-Lopez told officers

he lived in Mexico and not at that residence, defendant told officers he

had driven from Mexico days earlier, *Miranda* warnings were given,

and "[i]mmediately thereafter, Slaughter [the officer] asked Lopez

whether he or Bernal-Bajo [the other person present in the home at the

time the search warrant was executed] had brought any cocaine to the

residence." *Pacheco-Lopez*, 531 F.3d at 422. Pacheco-Lopez admitted he

had transported the cocaine and he was taken into a bedroom for

further questioning. *Id.* at 423.

In both of the cases defendant cites (*Seibert* and *Pacheco-Lopez*),

unlike in this case, there was one continuous statement conducted by

the same officer, in the same place, and *Miranda* warnings were

interjected "in the middle" of that one, continuous statement.

Additionally, in both of the cases defendant cites, those defendants were

continually in custody. In the instant case, however, the district court

found that Wooten made one statement, voluntarily, at the scene while

being detained as agents executed a search warrant at his home. After

that statement, because defendant had an outstanding arrest warrant,

he was arrested and transported to the FBI office in Macomb County.

9

Once there, he was given the opportunity to use the restroom, he was given coffee, he was offered food, he was read his *Miranda* rights (which he freely, voluntarily, and knowingly waived) and then he gave another, more detailed statement to agents. This case is not a case where the *Miranda* warnings were given literally "in the middle" of questioning and there therefore does not need to be such an analysis.

In *Oregon v. Elstad*, 470 U.S. 298, 318 (1985), the Supreme Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." If a prior statement is involuntary or coerced, then the court must determine whether the taint carried over into the subsequent statement. If there is no coercion affiliated with the first statement and it is voluntarily given without *Miranda* warnings, there is no taint analysis of a subsequent, warned statement. The Supreme Court again recognized that principle in *Seibert* when it determined that "[t]he admissibility of post-warning statements should continue to be governed by *Elstad's* principles unless the deliberate two-step strategy is employed." *Seibert*, 542 U.S. at 603.

10

Defendant argues that his second statement should be suppressed as a fruit of the alleged illegal prior questioning associated with the first statement. In essence, defendant is making a fruit of the poisonous tree argument developed in *Wong Sun v. United States*, 371 U.S. 471 (1963). But as the Supreme Court reiterated in *Seibert*, "the Court in *Elstad* rejected the *Wong Sun* fruits doctrine for analyzing the admissibility of a subsequent warned confession following 'an initial failure . . . to administer the warnings required by Miranda.'" *Seibert*, 542 U.S. 600 at 612, FN4, *citing Elstad*, 470 U.S. at 300.

After a hearing at the district court, the district court found that "Wooten's statements were not coerced" and denied suppression of the statements on that ground. (R. 25: Order, PgID 124). Since there was no finding that there was any coercion associated with his first statement, defendant's argument that his second statement is a fruit of an illegal prior statement fails.

The district court further requested supplemental briefing on a new argument raised by the defendant during the hearing, the same argument he makes now to this Court on appeal. (*Id.* at PgID 124–125). Defendant argues that the factors pronounced in *Seibert* (looking at the

11

completeness and detail of the two statements, the overlapping content, the timing and setting of the interviews, the continuity of police personnel, and the degree to which the interrogator's questions treated the statements as continuous) yields a finding that the two statements given by the defendant are one continuous statement. The district court found the two statements were separate and that the second statement yielded additional information and more detailed information. The agents testified that Wooten was asked the same preliminary questions his roommate was asked at the scene ("questions covered who lived at the house, the rental situation, and who had computer access"); Wooten was also shown images of his daughter and asked to identify her. (R. 33: Opinion, PgID 339). The defendant testified he was asked about the thumb drive at the scene (*Id*.), Special Agent Fleming testified that they were unaware of the existence of a thumb drive until the interview at the FBI offices and the district court "credit[ed] the testimony of the agents that they did not ask about the thumb drive." (R. 32: Suppression Tr., PgID 293; R. 33: Opinion, PgID 340). The district court further found that the information obtained at the FBI offices was additional and more detailed, including: the defendant was advised of

12

his *Miranda* rights; the defendant signed an "Advice of Rights" form and agreed to speak without an attorney; the defendant answered questions verbally and a written statement was produced that the defendant initialed and signed; the "interview covered his e-mail address, his use of various computers, how the home was equipped with internet service, and his possession of, his viewing, his downloading, his producing, and his distributing of child pornographic images and videos;" the defendant identified some pictures of his daughter; and the defendant signed a consent to assume his online identity form and a form authorizing consent to search his cell phone (*Id.* at PgID 339–340). Wooten also agreed that the discussion at the FBI office was more detailed. (R. 32: Tr. at PgID 49, 72-73).

After supplemental briefs were filed by both parties, the district court "decline[d] to characterize his [Wooten's] two statements as one continuous statement, with *Miranda* warnings given 'in the middle.' Specifically, Wooten made one statement at the scene and a second statement at the FBI Macomb office." (R. 33: Opinion, PgID 344). The district court went on to find that "[b]efore he made his second statement, Wooten was given the opportunity to use the restroom, he

13

was given coffee, he was offered food, he was read his *Miranda* rights, which he freely, voluntarily, and knowingly waived. The second statement differed in detail and content. It included additional information." (*Id.*) The district court found that "the *Miranda* warnings delivered at the MCRA [Macomb County Resident Agency FBI office] accomplished their objective. Accordingly, the Court finds no taint carries over to the subsequent statement. Notably, there was no coercion affiliated with the first statement." (*Id.*)

The defendant's two statements, the district court found, were not one continuous statement with *Miranda* interjected in the middle. The defendant's second statement was separate and distinct from the first.

14

15

# Conclusion

For the reasons stated above, the decision of the district court should be affirmed.

Respectfully submitted,

Barbara L. McQuade
United States Attorney

s/ Hala Y. Jarbou
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9734
hala.jarbou@usdoj.gov

Dated: December 2, 2013

15

# Certificate of Service

I certify that on Monday, December 02, 2013, I electronically filed this brief for the United States with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of that filing to the attorney for the defendant:

**Jeffrey Paul Nunnari**
jp59691@yahoo.com


s/ Hala Y. Jarbou
Assistant United States Attorney

## Relevant District Court Documents

Appellee, the United States of America, designates as relevant the following documents available electronically in the district court's record, case number 2:12-cr-20040-1, in the Eastern District of Michigan:

| Record Entry No. | Document Description | PgID |
|---|---|---|
| R. 18 | Motion to Suppress | 71–104 |
| R. 25 | Order denying in part motion to suppress | 124–125 |
| R. 27 | Supplemental Brief | 127–132 |
| R. 30 | Response to supplemental brief | 136–146 |
| R. 32 | Transcript motion to suppress 05/09/10 | 49, 72–73, 84–109, 118, 154–335 |
| R. 33 | Opinion & Order | 336–345 |
| R. 35 | First superseding indictment | 347–353 |
| R. 39 | Jury Verdict | 359–360 |
| R. 52 | Notice of Appeal | 413 |
| R. 55 | Judgment | 417–424 |
| R. 60 | Jury Trial Transcript 12/12/12 | 846–852 |

17